OHIO STATE PHARMACEUTICAL ASSOCIATION et al., Appellants,

v.

WICKHAM, Dir., Ohio State Board of Pharmacy, et al., Appellees.

[Cite as *Ohio State Pharmaceutical Assn. v. Wickham* (1989), 61 Ohio App.3d 488.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–32.

Decided Feb. 14, 1989.

*McShane, Breitfeller & Witten* and *Ralph E. Breitfeller,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Christopher M. Culley,* for appellee Wickham.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Nancy J. Miller,* for appellees Public Employees Retirement System, School Employees Retirement System, State Teachers Retirement System, Police and Firemen's Disability and Pension Fund, and Ohio State Highway Patrol Retirement System.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Charles E. Brown, Emens, Hurd, Kegler & Ritter, John C. McDonald* and *Gene W. Holliker,* for appellee National Rx Services, Inc.

STRAUSBAUGH, Judge.

This is an appeal by plaintiffs from a summary judgment granted by the court of common pleas in favor of defendants. The judgment was premised on the court's finding that plaintiffs lacked standing to maintain this declaratory judgment action. The common pleas court also overruled plaintiffs' motion for summary judgment.

The parties to this action include plaintiffs, the Ohio State Pharmaceutical Association ("OSPA"), an incorporated association of Ohio pharmacists; Forrest E. Pack, a registered pharmacist; and Pack Pharmacy, Inc., a retail pharmacy. Defendants to the action are Franklin Z. Wickham, Executive

Director of the Ohio State Board of Pharmacy ("director"); National Rx Services, Inc. ("National"), a retail pharmacy; and the Public Employees Retirement System, the Public School Employees Retirement System, the State Teachers Retirement System, the Police and Firemen's Disability and Pension Fund, and the Ohio State Highway Patrol Retirement System ("retirement systems").

Essentially, this suit arises from a dispute between OSPA and National over the enforcement and interpretation of R.C. 3719.05. The dispute arose sometime after 1981 when National entered into a contract with the various retirement systems so as to provide mail-order pharmacy services to more than 244,000 members of the various systems.

The retirement systems began to provide retired members with health care benefits in 1974 through Aetna Insurance Company. That package included coverage for prescription drugs whereby retirees could have their prescriptions filled at a local pharmacy and be reimbursed for eighty percent of the retail price. National, in 1979, proposed a mail-order pharmacy service as an alternative prescription drug benefit program. As a result of an actuarial investigation of the proposal, which concluded that the National program would offer significant savings, contracts with National were signed by the individual retirement systems to provide mail-order pharmaceutical service to the members of the retirement systems.

The National program permits retirees to submit their prescriptions by mail to its Columbus pharmacy, which fills the prescription and bills the retirement system in a single monthly billing based on the average wholesale price. The retirees are free either to use the National program or to continue having their prescriptions filled under the Aetna policy. Because some prescriptions submitted to National are written by out-of-state practitioners, which OSPA alleges is illegal, OSPA urged the director to seek an Attorney General's opinion regarding the filling of these prescriptions. In response to an inquiry by the Board of Pharmacy ("board"), the Attorney General concluded in 1982 that construing the statutes to prohibit pharmacists from filling out-of-state prescriptions would be unconstitutional under both the Supremacy and Commerce Clauses of the United States Constitution.

Plaintiffs then instituted the instant suit, on March 29, 1984, seeking a declaratory judgment in two respects. First, plaintiffs sought a declaration that R.C. 3719.05 and 3715.52(L) are enforceable and that the definitions of "practitioner" found in R.C. 3719.01(BB) and 4729.02(H) are valid and enforceable. The complaint was later amended to include a request that the court declare invalid a regulation which incorporated the broad definition of "practitioner" advanced by the Attorney General. The second count sought a

declaration that the retirement systems exceeded their statutory authority in contracting with National for the provision of pharmaceutical products by mail.

The director, in July 1986, moved to dismiss count one on the ground that plaintiffs lacked standing. The retirement systems moved, on June 4, 1986, for a judgment on the pleadings in part for the reason that plaintiffs lacked standing. National followed suit with separate motions for summary judgment as to counts one and two arguing, *inter alia,* that plaintiffs lacked standing. Plaintiffs also filed a motion for summary judgment on July 28, 1986. Ultimately, in December 1987, the trial court granted each of the defendant's motions and overruled plaintiffs' motion for summary judgment. Each of the rulings was based upon the common pleas court's finding that plaintiffs lacked standing to maintain the declaratory judgment.

Plaintiffs appeal and set forth the following five assignments of error:

"1. The trial court erred in granting the motion of Defendant Franklin Z. Wickham to dismiss Count I of the third amended Complaint on the basis that the plaintiffs lack legal standing to maintain this action.

"2. The trial court erred in granting the motion of the Defendant National Rx Services, Inc. for summary judgment on Count I of the third amended Complaint on the basis that the plaintiffs lack standing to pursue this action.

"3. The trial court erred in granting the motion of the Defendant Retirement Systems for judgment on the pleadings on the basis that the plaintiffs lack legal standing to maintain this action.

"4. The trial court erred in granting the motion of the Defendant National Rx Services, Inc. for summary judgment on Count II of the third amended Complaint on the basis that the plaintiffs lack standing to pursue this action.

"5. The trial court erred in overruling the plaintiffs' motion for summary judgment on the ground that the plaintiffs lack standing."

Defendants filed a motion to dismiss this appeal on January 25, 1988 for the reason that OSPA was no longer a legal entity capable of maintaining suit. This court overruled defendants' motion because the issue raised matters outside the record. *Ohio State Pharmaceutical Assn. v. Wickham* (Mar. 1, 1988), Franklin App. No. 88AP–32, unreported.

Although plaintiffs assign five errors for our review, they concede that only two issues are in fact before the court. These issues are whether plaintiffs have standing to seek a declaration that the statutes at issue are constitutional and whether plaintiffs have standing to challenge the validity of the contracts between National and the retirement systems.

In support of the first issue, plaintiffs contend that the risk of criminal prosecution is sufficiently present in this case so as to confer standing on them. Specifically, plaintiffs argue that the statutes at issue clearly affect them as a group since the statutes govern the dispensing of prescription drugs. Additionally, it is plaintiffs' position that a justiciable controversy exists because the director's interpretation of "practitioner," for purposes of R.C. Chapters 3719, 3715 and 4729, has created confusion among Ohio pharmacists and because that interpretation has created a disagreement between plaintiffs and defendants. In response to defendants' contentions that plaintiffs have failed to demonstrate any actual threat of prosecution as a result of complying with the director's interpretation of the statutes, plaintiffs argue further that no actual violation need be present in order to obtain declaratory relief. Finally, plaintiffs maintain that the declaration sought would terminate the instant controversy. In summary, the essence of plaintiffs' argument is that, absent declaratory relief, they risk criminal or civil liability were they to heed the director's determination that Ohio pharmacists may legally fill prescriptions written by out-of-state practitioners.

■ Initially, it should be noted that the standing of OSPA to challenge the director's definition of "practitioner" rests on somewhat different footing than that of plaintiffs Pack and Pack Pharmacy, Inc. Generally, associational standing is valid if the members of the association would have standing as individuals, the interests advanced by the association in support of standing are relevant to the association's purpose or goals and individual participation by association members is not required. *Fraternal Order of Police v. Columbus* (1983), 10 Ohio App.3d 1, 10 OBR 6, 460 N.E.2d 639, and *Ohio Academy of Nursing Homes, Inc. v. Barry* (1987), 37 Ohio App.3d 46, 523 N.E.2d 523. However, because this matter was dismissed as to all parties, our first inquiry is limited to the determination of whether plaintiffs Pack, as an OSPA member, and Pack Pharmacy have standing to press their claims individually.

■ The doctrine of standing in Ohio, whatever its source, generally requires that litigants establish, at a minimum, a real interest in the subject matter of the suit. *State, ex rel. Dallman, v. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 64 O.O.2d 103, 298 N.E.2d 515, syllabus. This court has stated that standing "requires demonstration of a concrete injury in fact, rather than an abstract or suspected injury." *State, ex rel. Consumers League of Ohio, v. Ratchford* (1982), 8 Ohio App.3d 420, 424, 8 OBR 544, 548, 457 N.E.2d 878, 889. Standing to seek declaratory relief as to the validity of any statute or rule is conferred upon "[a]ny person * * * whose rights, status, or other legal relations are affected by a constitutional provision,

statute, rule * * *." R.C. 2721.03. Where, as here, a complainant requests a declaration that a statute is *valid*, standing may be established by showing that the complaining party is affected by or materially interested in the contested statute or ordinance and that a justiciable controversy is extant. *Pack v. Cleveland* (1982), 1 Ohio St.3d 129, 131, 1 OBR 166, 168, 438 N.E.2d 434, 437. A justiciable controversy does not require an actual violation of a statute, but rather turns on the relationship of parties under the statute at issue. *Id.* Such relationship requires that the parties have adverse legal interests, of sufficient immediacy and reality to warrant declaratory relief. *Peltz v. South Euclid* (1967), 11 Ohio St.2d 128, 131, 40 O.O.2d 129, 130–131, 228 N.E.2d 320, 322–323; *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261.

■ Here, plaintiffs assert the risk of criminal or civil liability for filling out-of-state prescriptions as the predicate for standing under count one. For the reasons which follow, we find this assertion lacks merit.

First, plaintiffs have failed to establish a concrete injury. Plaintiffs adduced no evidence to controvert defendants' evidence that pharmacists who fill out-of-state prescriptions have suffered neither civil nor criminal liability. See Civ.R. 56(E). While plaintiffs' argument is well-taken regarding the presumption that criminal statutes will be strictly enforced, that argument has no application under the facts of this case. Defendants' evidence tends to rebut the presumption, since no pharmacist employed by National has ever been criminally prosecuted for filling out-of-state prescriptions. Moreover, our review of the criminal statutes cited by plaintiffs does not reveal that the filling of out-of-state prescriptions would clearly subject pharmacists to liability under R.C. 2925.02, 2925.03 or 2925.23 in every circumstance. See, *e.g.*, R.C. 4731.36.

Somewhat related to this initial reason is a second and more fundamental problem in plaintiffs' standing theory. That is, plaintiffs have failed to demonstrate a *real* threat of prosecution. While plaintiffs' status as pharmacists establishes a sufficient interest in the contested statutes to challenge the director's interpretation, they have failed to demonstrate a valid threat of prosecution. Should plaintiffs' members violate the statutes, such conduct would be contrary to plaintiffs' position regarding the validity of the statutes. As such, any allegedly illegal conduct on the part of plaintiffs' members cannot at once serve to establish plaintiffs' standing to establish the validity of the law.

■ *Pack, supra*, does not require a different result. In *Pack*, the plaintiffs sought to establish the validity of a law which exempted them from criminal prosecution. The Cleveland City Prosecutor, relying upon a Cuyaho-

ga County Court of Appeals' decision, determined that the law was unconstitutional and began to prosecute the exempted class. As such, the *Pack* plaintiffs were subjected to a concrete threat of prosecution despite compliance with the statute. *Pack*, however, cannot be understood to stand for the proposition that a party may create standing to establish the validity of a statute by engaging in conduct which is *contrary* to the statute. Here, should plaintiffs *comply* with the statutes in question, they will never be subjected to criminal or civil liability. A justiciable controversy requires more than a contrived injury.[1]

Finally, even if it be conceded that the potential for prosecution is sufficiently present in this case, plaintiffs' standing under count one must fall for yet another reason. That is, if plaintiffs are ever subjected to prosecution, it is not defendants who are interested in securing that end. The only party to this suit who can prosecute plaintiffs for filling out-of-state prescriptions—the director—has determined that the department will not prosecute violators. See Ohio Adm.Code 4729–5–15(B). Thus, to the extent that plaintiffs assert potential prosecution, defendants are not the parties who present that potential. In short, with respect to the issue of prosecution, plaintiffs' interests are not truly adverse to those of defendants.

For all of the above reasons, plaintiffs' first, second and third assignments of error are overruled.

▮ Plaintiffs, under the fourth assignment of error, maintain that the trial court erred in granting summary judgment in favor of defendants as to count two. It is plaintiffs' position that they have standing to seek a declaration that the contracts between National and the retirement systems are invalid. The basis for this position is the evidence that plaintiffs' members have lost customers to National as a result of the contracts so as to incur a competitive injury. As support for this contention, plaintiffs rely upon this court's decisions in *Control Data Corp. v. Controlling Bd.* (1983), 16 Ohio App.3d 30, 16 OBR 32, 474 N.E.2d 336; *State, ex rel. Connors, v. Dept. of Transp.* (1982), 8 Ohio App.3d 44, 8 OBR 47, 455 N.E.2d 1331; and *C.E. Angles, Inc. v. Evans* (Dec. 14, 1982), Franklin App. No. 82AP–635, unreported, 1982 WL 4563.

---

1. A close reading of the third amended complaint reveals another predicate for standing based on increased competition by pharmacies which fill mail-order prescriptions written by out-of-state practitioners. While such allegation suggests a more proper basis for standing in Commerce Clause challenges, this position was never advanced either in the trial court or in this court with respect to count one. Accordingly, we express no opinion as to the merits of such a claim.

Plaintiffs' reliance upon those cases is misplaced. *Control Data Corp., State, ex rel. Connors,* and *Angles* all involved the standing of disappointed bidders for public contracts which were required by state law to be let only upon competitive bidding. Since plaintiffs are not among the class of disappointed bidders for the contracts with the retirement systems, the mere allegation of increased competition from National does not give them any interest under those contracts. Accordingly, plaintiffs have no standing conferred by virtue of the contracts.

Moreover, to the extent that plaintiffs premise their standing upon the fact that the contracts were let without competitive bidding, the holdings of *Control Data Corp., State, ex rel. Connors,* and *Angles* can similarly be distinguished from this case. Plaintiffs' position, which relies upon the statutes which authorize the retirement systems to enter into contracts, cannot be invoked here because there is no statutory requirement that the systems let contracts pursuant to competitive bidding. See R.C. 145.09, 145.58, 742.02, 742.45, 3307.03, 3307.74, 3309.03, 3309.69 and 5505.202.

In this respect, the holding of the United States Supreme Court in *Hardin v. Kentucky Util. Co.* (1968), 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787, is instructive. In *Hardin,* the government petitioners, including the Tennessee Valley Authority ("TVA"), contended that Kentucky Utilities lacked standing to challenge the expansion of TVA into the market area of Kentucky Utilities. The petitioners maintained that the sole injury sustained by Kentucky Utilities was economic, which was an insufficient basis for mounting the challenge to TVA's statutory authority. The Supreme Court rejected this analysis, noting that while competitive injuries alone are normally not enough to challenge a statute, such injuries are sufficient where the challenged statute reflects a legislative intent to protect a competitive interest. *Id.* at 6, 88 S.Ct. at 654, 19 L.Ed.2d at 792–793.

We adopt the reasoning of *Hardin* and hold that a party has standing, due to a competitive injury, to seek a declaration as to the statutory validity of a contract with a public agency where the statute upon which the declaration is sought evinces a legislative intent to protect competitive interests. Here, as noted above, plaintiffs fail to meet this standard since the statutes at issue do not indicate any legislative purpose to protect Ohio pharmacists from increased competition.

Plaintiffs' fourth assignment of error is overruled.

Given our conclusion that summary judgment was correctly ordered on behalf of defendants because plaintiffs lacked standing under either count one or two of the complaint, the trial court properly denied summary judgment in

favor of plaintiffs as to the merits. The fifth assignment of error is overruled.

Having overruled all of the assignments of error, the summary judgment of the common pleas court is affirmed.

*Judgment affirmed.*

McCormac, P.J., and Reilly, J., concur.