NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0647n.06

No. 08-3745

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
SEPT 18, 2009
LEONARD GREEN, Clerk

AARTI HOSPITALITY, LLC, d/b/a Hilton Garden )
Inn; ARITI, LLC, d/b/a LaQuinta Inn; BLISSFUL )
CORPORATION, d/b/a Comfort Inn South; )
COLUMBUS LODGING ASSOCIATES, LP, d/b/a )
Holiday Inn Express; NATRAJ CORPORATION, )
d/b/a Best Western; FELICIA CORPORATION, d/b/a )
Microtel; KALI HOSPITALITY, LTD., d/b/a Days )
Inn; SGB MANAGEMENT, INC., d/b/a Hampton Inn, )
                                          )
      Plaintiffs-Appellants, )
                                          )
           v. )
                                          )
CITY OF GROVE CITY, OHIO; JOSEPH W. )
TESTA, Franklin County Auditor; DRURY INNS, )
INC.; BOB EVANS FARMS, INC., )
                                          )
      Defendants-Appellees. )
                                          )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE: MERRITT, GRIFFIN, and KETHLEDGE, Circuit Judges.

     GRIFFIN, Circuit Judge.

     Plaintiffs, eight hotels in Grove City, Ohio, alleged that the city discriminated against them based on the ethnic background of their owners and denied them procedural due process when it passed a tax abatement ordinance and approved certain design features for the benefit of plaintiffs' business competitors, thereby giving those rivals unfair business advantages. Plaintiffs argued that the ordinance should be declared void as contrary to Ohio law under Ohio's Declaratory Judgment

Act, Ohio Revised Code § 2721.03, alleged violations of Ohio's Public Records Act, Statutory Records Retention Schedule, and Open Meetings Act, and asserted federal claims under 42 U.S.C. § 1983 based on the Equal Protection and Due Process Clauses and the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

The district court entered judgment on the pleadings in defendants' favor under Rule 12(c) of the Federal Rules of Civil Procedure on plaintiffs' request for declaratory relief, ruling that their alleged injury of "increased competition" was insufficient to confer standing upon them under Ohio's Declaratory Judgment Act. The district court also granted summary judgment in Grove City's favor on plaintiffs' federal claims, holding that the city did not discriminate against them or deny them due process. Finally, the district court declined to exercise supplemental jurisdiction over plaintiffs' state law records and open meetings claims and remanded them to state court.

Because we hold that plaintiffs' state law allegations relating to their request for declaratory relief fail to satisfy Ohio's standing requirements, we affirm the district court's dismissal of those claims. In addition, because the evidence does not demonstrate that Grove City discriminated against plaintiffs or denied them due process, we affirm the district court's grant of summary judgment in Grove City's favor on plaintiffs' federal claims.

I.

In 1986, Grove City passed an ordinance which created a community reinvestment area ("CRA"). Within the CRA, Grove City sought to create "incentive measures to assist in encouraging . . . economic and community development . . . by remodeling or new construction[.]" One

"incentive" the ordinance created was a fifteen-year tax exemption for the construction of commercial and industrial buildings within the CRA.

In 2003, the city expanded the CRA by adding additional acreage to the tax abatement area. Plaintiff hotels are located within the expanded CRA. Although the hotels concede that they can take advantage of the tax abatements, they complain that in order to do so, they must remodel or construct new improvements on their already existing properties. They contend that this puts them at a "grossly unfair" competitive disadvantage to new businesses, including defendant Drury Inns, Inc., and defendant Bob Evans Farms, Inc., which took advantage of the fifteen-year tax abatements to construct a new hotel and restaurant within the expanded CRA.

Although plaintiffs' primary complaint concerns the legality of the tax abatement ordinance under Ohio law, their underlying theory is that the ordinance was part of a pattern by Grove City of discriminating against the hotels because of the ethnic background of their owners, who are immigrants from India. As part of this alleged scheme, plaintiffs also contend that the city discriminated against them by denying their requests for tax abatements and economic incentives; rejecting their requests for variances related to the designs and features of their hotels, while granting Drury Inns's requests (allowing that hotel and its sign to be built higher and larger than other hotels in the area); commissioning a study assessing the feasibility of new hotel construction within the city and sharing its results with Drury Inns but not with plaintiffs; and holding secret meetings with Drury Inns. Further, they allege that Grove City withheld information or misled them about the 2003 ordinance and the construction of Drury Inns.

On September 27, 2006, plaintiffs filed suit against defendants, as well as other defendants,[1] in the Franklin County Court of Common Pleas. Thereafter, the majority of defendants removed the case to the United States District Court for the Southern District of Ohio.

The amended complaint asserted fourteen counts: Counts One through Five sought a declaratory judgment voiding the 2003 ordinance for failing to comply with Ohio law under Ohio Revised Code § 2721.03,[2] and Counts Thirteen and Fourteen asserted violations of Ohio's Public Records Act,[3] Ohio's Statutory Records Retention Schedule,[4] and Ohio's Open Meetings Act.[5] The remaining counts were the following federal claims asserted only against Grove City: violation of the Equal Protection Clause (Count Six), violation of the Fourteenth Amendment (Count Seven), violation of Due Process (Count Eight), violation of public policy (Count Nine), violation of 42 U.S.C. § 1983 based upon the Equal Protection Clause (Count Ten), a § 1983 claim based upon the

---

[1]The other defendants included Hawkstone Associates, Inc., Lucas State Street Stringtown Ltd., Ingram Family Limited Partnership, Roosters Real Estate, LLC, and John Does.

[2]Ohio Revised Code § 2721.03 provides, in pertinent part:

Subject to division (B) of section 2721.02 of the Revised Code, . . . any person whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations under it.

[3]OHIO REV. CODE ANN. § 149.43.

[4]OHIO REV. CODE ANN. §§ 121.211 and 149.01 *et seq*.

[5]OHIO REV. CODE ANN. § 121.22.

Due Process Clause (Count Eleven), and a § 1983 claim based upon an alleged violation of Title VI of the Civil Rights Act of 1964 (Count Twelve).

On May 16, 2007, the district court granted defendants' motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on Counts One through Five, ruling that plaintiffs lacked standing to obtain a declaratory judgment voiding the 2003 ordinance because "a mere allegation of increased competition does not constitute the adverse effect on personal, pecuniary, or property rights needed to confer sufficient standing." The court also held that plaintiffs did not have standing in their capacities as taxpayers because they made no contention that they were being forced to operate under, or that their tax dollars were supporting, an illegal ordinance or regime, and they failed to identify any property rights or interests that were jeopardized by an ordinance that could equally benefit them.

On May 9, 2008, the district court granted summary judgment in Grove City's favor on plaintiffs' federal claims (Counts Six through Twelve). Regarding the Equal Protection claim, the court held that there was no evidence that Grove City discriminated against plaintiffs because they did not attempt to obtain a tax abatement under the 2003 ordinance, and Grove City did not treat them differently than similarly-situated entities which were not Indian-owned. As to their procedural Due Process claim, the court ruled that Grove City did not deny plaintiffs due process because there was no evidence that it failed to give them adequate notice about the ordinance and an opportunity to be heard. The court also held that plaintiffs' claims based on Title VI of the Civil Rights Act of 1964 and public policy failed because plaintiffs did not demonstrate that Grove City discriminated

against them or violated public policy. Finally, the court declined to exercise jurisdiction over plaintiffs' remaining state law claims (Ohio Records and Open Meetings Act claims in Counts Thirteen and Fourteen) and remanded those claims to the Franklin County Court of Common Pleas.

Plaintiffs timely appeal.

II.

First, plaintiffs contend that the district court erred in ruling that they lacked standing to request a declaratory judgment voiding the ordinance under Ohio Revised Code § 2721.03.[6] To support their standing under § 2721.03, plaintiffs assert that they are taxpayers within the tax abatement area, are directly affected by and suffered an economic impact from the 2003 ordinance, and are entitled to a ruling regarding the validity of the ordinance before they make substantial expenditures to remodel or construct new improvements on their properties in reliance upon the city's promise of tax abatements.

We review the district court's dismissal of plaintiffs' claims under Rule 12(c) of the Federal Rules of Civil Procedure using the same de novo standard of review applicable to our review of an order of dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Tucker v.*

---

[6]The relevant counts (Counts One through Five) alleged that the 2003 ordinance was void because "a community reinvestment area cannot contain two separate and noncontiguous areas and, therefore, the purported expansion to the area east of I-71 was null and void" (Count One); the ordinance failed to comply with the post-1994 CRA statutes and requirements, "including but not limited to, the requirement to enter into a community reinvestment area agreement prior to the commencement of construction under R.C. §[]3735.671" (Count Two); it was revoked (Count Three); it violated Ohio Revised Code § 3735.671 and other post-1994 law (Count Four); and Grove City failed to make the required filings and disclosures to the Ohio Department of Development, in violation of Ohio law (Count Five).

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

In addition, we give deference to a district court's denial of declaratory relief, reviewing that decision for abuse of discretion. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995)). Under the abuse of discretion standard, plaintiffs bear a heavy burden – we must have "a definite and firm conviction that [the district court's] conclusion was a clear error of judgment." *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006).

A.

The district court based its denial of declaratory relief upon its determination that plaintiffs failed to satisfy Ohio's standing requirements. Before addressing the parties' competing positions about whether an allegation of increased competition is sufficient to confer upon plaintiffs *state law* standing to obtain a declaratory judgment under Ohio Revised Code § 2721.03, we first assess if the district court erred in not considering whether plaintiffs satisfied the *constitutional* standing requirements of Article III of the United States Constitution.

Three principles apply. First, while it is true that Article III standing "is the threshold question in every federal case," *see Warth v. Seldin*, 422 U.S. 490, 498 (1975), it is well-established

that the law "does not dictate a sequencing of jurisdictional issues" and that "a federal court [may] choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999); *see also Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue, . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.").

Second, because plaintiffs' right to relief on these state law claims arises solely from an Ohio statute, the crucial inquiry is whether Ohio law, not federal law, authorizes the remedy sought. The law is well-settled that a federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). Whether plaintiffs have standing to seek a declaratory judgment under Ohio Revised Code § 2721.03 is a question of Ohio substantive, not federal procedural, law. *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 225 (1996) (holding that the issue of "who may bring suit" is a "substantive question[]" that must "be answered by the domestic law selected by the courts of the contracting states."); *Int'l Primate Protection League and its Members v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (1991) (approving the principle that "standing 'should be seen as a question of substantive law, answerable by reference to the statutory . . . provision whose protection is invoked.'") (quoting Fletcher, *The Structure of Standing*, 98 YALE L.J. 221, 229 (1988)); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949) ("[T]he rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than

in the state court. If recovery could not be had in the state court, it should be denied in the federal

court.").

The Second Circuit has explained that:

[i]t is the source of the right, not the basis of federal jurisdiction, which determines the controlling law. This includes any restrictions set by the state on whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of the state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court.

*Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) (quotation marks,

parentheses, and citations omitted); *see also In re Asbestos Litigation*, 90 F.3d 963, 1022 n.92 (5th

Cir. 1996) (vacated and remanded on other grounds) ("The question of who may bring a suit is a

question answered by substantive law in a diversity case, state substantive law. . . . [T]he role of state

law is to identify, within federal constitutional limits, the persons who have legally protected

interests and what those interests are.") (Smith, J., dissenting); *Certain Interested Underwriters at*

*Lloyd's v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994) (holding that, in diversity cases, state substantive

law determines whether a party is a "real party in interest" with standing to sue under Rule 17(a) of

the Federal Rules of Civil Procedure); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d

764, 772-74 (1st Cir. 1994) (holding that state substantive law must be applied in state-based

declaratory judgment actions brought in federal court).

Thus, on facts similar to those in this case, the Eighth Circuit in *Westborough Mall, Inc. v.*

*City of Cape Girardeau*, 693 F.2d 733 (8th Cir. 1982) applied state substantive law to determine

whether the plaintiffs had standing to challenge the validity of a city's zoning ordinances. Affirming the district court's grant of summary judgment in favor of the city, the Eighth Circuit held (without addressing Article III standing) that the plaintiffs' allegation of "mere competitive disadvantage" resulting from the ordinances "does not give rise to standing" under Missouri law. *Id*. at 747-48.

Third, Article III standing jurisprudence may not be completely irrelevant when assessing a plaintiff's standing to bring state law claims in federal court. Where a state supreme court has not addressed the relevant state law issue, we must "discern, from all available sources" (such as federal cases interpreting Article III's standing requirements) how the state supreme court would rule. *McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 328 (6th Cir. 2006). Moreover, although we have not addressed the issue, the Ninth Circuit has held that "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (holding in a diversity case that, although California law authorized the plaintiff to challenge the defendant's allegedly unfair business practices without having suffered an individualized injury, the plaintiff nevertheless lacked standing to pursue his state law claims in federal court because he failed to satisfy Article III's standing requirements). Under *Lee*, therefore, an interesting question might arise where a plaintiff who has incurred no injury sues in federal court to enforce a public right under Ohio law. In these "public interest" cases, the Supreme Court of Ohio has held that Ohio law, unlike Article III, does not require the complaining party to have been injured in order to have standing to sue. *See State*

*ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1081 (Ohio 1999) ("[T]he federal [standing] decisions . . . are not binding upon this court, and we are free to dispense with the requirement for injury where the public interest so demands.") (citation and quotation marks omitted). In such a case, we might be called upon to determine whether Article III forecloses suit in federal court despite the plaintiff's ability to satisfy Ohio's standing requirements, thereby confronting *Lee* head-on and deciding whether it is the law of this circuit. However, we need not reach that important question today because we conclude that, under Ohio substantive law, plaintiffs do not have standing to seek an Ohio declaratory judgment.

B.

"When deciding an issue of state law, we apply the law of the state's highest court." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 697 (6th Cir. 2006) (citing *Erie*, 304 U.S. at 78). Where the state's highest court has not decided the applicable law, we "must make the best prediction . . . of what the [court] would do if it were confronted with [the] question[,]" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citations and internal quotation marks omitted), "ascertain[ing] the state law from all relevant data, including the state's intermediate court decisions." *Ellis,* 455 F.3d at 698 (citations and quotation marks omitted). "[W]here a state appellate court has resolved an issue to which the high court has not spoken, we will normally treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 n.3 (6th Cir. 2000) (citation and quotation marks omitted). An applicable state appellate court decision guides our analysis

"regardless of whether the appellate court decision is published or unpublished." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). Further, "when given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Combs*, 354 F.3d at 577 (citations and quotation marks omitted).

Ohio's courts have held that Ohio Revised Code § 2721.03 "represent[s] [a] legislative grant[] of jurisdiction to Ohio courts under certain circumstances to hear and decide declaratory judgment actions. That declaratory relief is an available remedy is a separate question from one's standing to file such an action." *Holcomb v. Schlichter*, 517 N.E.2d 1001, 1004-05 (Ohio Ct. App. 1986). *See also Walgash v. Bd. of Trs. of Monclova Twp., Lucas County*, No. L-80-105, 1981 WL 5518, at *4 (Ohio Ct. App. Mar. 20, 1981) ("While [Ohio Revised Code §] 2721.03 creates the right to bring a declaratory judgment action to determine the validity of an ordinance, the requirements of justici[a]bility, including standing and ripeness, must still be met before a court can entertain the action.").

"The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented." *Cuyahoga County Bd. of Comm'rs v. State*, 858 N.E.2d 330, 333 (Ohio 2006) (citation and quotation marks omitted). "In order to establish standing [under Ohio law], a person must demonstrate that the challenged action has caused or will cause him or her injury in fact, economic or otherwise, and that the interest sought to be protected is within the sphere of interests protected or regulated by the statute in question." *Stark-Tuscarawas-Wayne Joint Solid Waste Mgmt.*

*Dist. v. Republic Waste Servs. of Ohio II, LLC*, No. 07AP-599, 2009 Ohio App. LEXIS 1799, at *19

(Ohio Ct. App. May 7, 2009) (citations and internal quotation marks omitted). "The alleged injury

must be concrete, rather than abstract or suspected[.]" *Id.* (citations and internal quotation marks

omitted). Moreover, although "threatened injury" is enough to establish the required "injury in fact,"

an injury that is merely "threatened," rather than "actual and immediate," must pose "a realistic

danger arising from the challenged action." *Id.* at 20 (citations and internal quotation marks

omitted).[7]

   In Ohio, "[a]s a general rule competitors lack standing to challenge competition created or

enhanced by government action unless they can claim the benefit of an implied or expressed

statutory aid to standing." *Blanchester Care Center, Inc. v. Ackerman*, No. 81AP-113, 1981 Ohio

App. LEXIS 12845, at *18 (Ohio Ct. App. Nov. 5, 1981). "[A]n implied or expressed statutory aid

to standing" has been found where the challenged statute or ordinance was enacted, at least in part,

to protect competitive interests. *See Atwood Res., Inc. v. Public Utils. Comm'n of Ohio*, 538 N.E.2d

1049, 1051-52 (Ohio 1989) (holding that public utility company had standing to challenge another

public utility's competitive activities because an Ohio statute expressly authorized such suits and the

---

[7]By comparison, Article III standing requires that a party demonstrate that it:

   (1) . . . has suffered an "injury in fact" that is (a) concrete and particularized and (b)
   actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable
   to the challenged action of the defendant; and (3) it is likely, as opposed to merely
   speculative, that the injury will be redressed by a favorable decision.

*Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) (quoting *Fieger v. Ferry*, 471
F.3d 637, 643 (6th Cir. 2006)).

complained-of conduct was regulated by law); *Ackerman*, 1981 Ohio App. LEXIS 12845, at *20 (holding that the plaintiff had standing to bring a mandamus action challenging the construction of a competitor nursing home because "the [Ohio] legislature has apparently concluded that the public interest in adequate health services is furthered by some restriction on competition."). In contrast, where the controverted law does not evince a legislative intent to protect a plaintiff from increased competition, Ohio's courts have found standing to be lacking. *See American Aggregates Corp. v. City of Columbus*, 584 N.E.2d 26, 28-29 (Ohio Ct. App. 1990) (holding that a corporate plaintiff lacked standing to appeal a zoning variance granted by the City of Columbus to plaintiff's competitor because Ohio Revised Code § 2506.01, which "provides that an appeal may be taken from an administrative decision which determines the 'rights, duties, privileges, benefits, or legal relationships of a person,' . . . is not intended to encompass the benefit of reduced competition."); *Ohio State Pharmaceutical Ass'n v. Wickham*, 573 N.E.2d 148, 154 (Ohio Ct. App. 1989) (holding that plaintiff pharmacists had no standing to seek a declaratory judgment voiding a competitor's mail-order pharmaceutical services to various state retirement systems because "the statutes at issue do not indicate any legislative purpose to protect Ohio pharmacists from increased competition.").

The *Atwood* and *Wickham* courts were persuaded by the United States Supreme Court's decision in *Hardin v. Kentucky Util. Co.*, 390 U.S. 1 (1968). *Hardin* held that a utility company had standing to request an injunction against the Tennessee Valley Authority's ("TVA") competitive activities in alleged violation of a federal statute because the utility company was within the class of private utilities which the statute protected from TVA competition. *Id*. at 7. The Court explained:

> This Court has, it is true, repeatedly held that the economic injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of its competitor's operations. *Railroad Co. v. Ellerman*, 105 U.S. 166 (1882); *Alabama Power Co. v. Ickes*, 302 U.S. 464 (1938); *Tennessee Power Co. v. TVA*, 306 U.S. 118 (1939); *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940). But competitive injury provided no basis for standing in the above cases simply because the statutory and constitutional requirements that the plaintiff sought to enforce were in no way concerned with protecting against competitive injury. In contrast, it has been the rule, at least since the *Chicago Junction Case*, 264 U.S. 258 (1924), that when the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision. *See Alton R. Co. v. United States*, 315 U.S. 15, 19 (1942); *Chicago v. Atchison, T. & S. F. R. Co.*, 357 U.S. 77, 83 (1958).

*Id*. at 5-6. *See also Warren Bank v. Camp*, 396 F.2d 52, 54 (6th Cir. 1968) ("We recognize that the United States Supreme Court has recently reaffirmed its view that economic injury resulting from lawful competition is not alone sufficient to convey standing to sue.").

Here, as in *American Aggregates* and *Wickham*, Grove City's tax abatement ordinance did not protect against competitive injury. To the contrary, the ordinance created "incentive measures to assist in encouraging . . . economic and community development . . . by remodeling or new construction." Thus, the ordinance was enacted for the legitimate purpose of stimulating Grove City's economy by *encouraging* (not reducing) competition.

We also note that the harm that plaintiffs allege is purely speculative. Plaintiffs do not assert that they have suffered or will incur economic injury simply because one hotel – Drury Inns – has entered the hotel market in Grove City where the eight plaintiff hotels have done business for a number of years. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (stating that, when reviewing a district court's grant of a motion for judgment on the pleadings, "we need not accept as true legal

conclusions or unwarranted factual inferences"). Such an assumption is particularly inappropriate where, as here, plaintiffs concede that the tax abatements are equally available to them and that they have neither applied for, nor been denied, any tax abatements under the 2003 ordinance. *See Walgash*, 1981 WL 5518, at *4 (reversing the trial court's declaratory judgment voiding amendments to a zoning ordinance under § 2721.03 because "[t]here is no claim . . . that any of the plaintiffs have applied for a zoning permit, transferred their land or attempted to have a proposed plat drawing approved. Therefore, any possible effect of these zoning ordinances on these particular plaintiffs-appellees is largely speculative."). Further, although plaintiffs argue in their appeal that they desire a judicial determination regarding the validity of the 2003 ordinance before expending funds to improve their properties in reliance upon the city's promise of tax abatements, it is solely plaintiffs themselves who seek to invalidate the ordinance. Indeed, the first five counts of the amended complaint are unambiguously labeled "The 2003 Ordinance Is Void."

Finally, the district court ruled correctly that plaintiffs lacked standing in their capacities as taxpayers. Plaintiffs concede that they "are not challenging the expenditure of public funds[,]" and they identify no public "right," apart from their purely personal grievance regarding their own speculative economic injury from increased competition, that they are seeking to enforce. *See State ex rel. Levin v. Schremp*, 654 N.E.2d 1258, 1261 (Ohio 1995) (holding that to assert a statutory taxpayer suit, "the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive or advantage."). Moreover, plaintiffs do not allege that they complied with Ohio's statutory requirements for initiating a suit which seeks to enjoin a municipal corporation's

misapplication of taxpayer's funds. *See* OHIO REV. CODE §§ 733.56 & 733.59; *Haig v. Ohio State Bd. of Educ.*, 584 N.E.2d 704, 707 (Ohio 1992) (holding that "proceedings for declaratory relief will not be entertained where another 'equally serviceable' remedy is provided.") (citation omitted); *Westbrook v. Prudential Ins. Co. of Am.*, 524 N.E.2d 485, 488-89 (Ohio 1988) (holding that a common-law taxpayer suit "may be entertained only in the absence of a statutory remedy" and that "where statutory relief is afforded and clearly applies to the circumstances giving rise to the action, the statute constitutes the exclusive avenue for seeking redress.").

For these reasons, we affirm the district court's grant of judgment on the pleadings in Grove City's favor on Counts One through Five.

III.

Next, plaintiffs contend that the district court erred in granting summary judgment in Grove City's favor on their federal Equal Protection, procedural Due Process, Title VI, and Public Policy claims (Counts Six through Twelve). They assert that "[g]enuine issues of material fact exist as to whether Grove City discriminated against [them], denied them due process and otherwise violated their rights."

We review a district court's grant of summary judgment de novo. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

A.

Plaintiffs' constitutional claims are brought under 42 U.S.C. § 1983.[8] To state a claim under § 1983, plaintiffs must establish: "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

1.

To establish a violation of the Equal Protection Clause, plaintiffs must show that Grove City discriminated against them because they are Indian-owned. *See Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (stating that a § 1983 plaintiff alleging an Equal Protection violation "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.") (citation omitted). To support such an inference, plaintiffs "must demonstrate that the government treated [them] disparately as compared to similarly situated persons . . . ." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

Plaintiffs contend that they "cannot take advantage of the tax abatement because it would require them to demolish their existing hotels and spend millions of dollars building new hotels, which would offset by far any gained tax advantage" and that "[t]his is not economically feasible given the decreasing revenues and occupancy rates in Grove City's soft hotel market." They also emphasize that:

---

[8]The direct constitutional claims asserted in Counts Six, Seven, and Eight are duplicative of, and are therefore subsumed by, those brought pursuant to § 1983 in Counts Ten, Eleven, and Twelve. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) (holding that "in cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations"), *vacated on other grounds*, 488 U.S. 1036 (1989).

the district court overlooked the mass of evidence demonstrating disparate treatment: [plaintiffs] were refused an abatement and variances, were not informed about the Drury Inn development, were not informed about the pending expansion of the CRA to include [plaintiffs'] properties and Drury Inn's property, never got the benefit of an Impact Study before developing their hotels, were not informed that they could obtain a tax abatement if they constructed meeting rooms, have never received the attention and assistance from Grove City and its Council that was given to Drury Inn, and have developed in a PUD [planned unit development] [sic] and not received the signage and height concessions given to Drury Inn.

The evidence supporting plaintiffs' claims of discrimination is lacking. The district court found correctly that the expanded CRA included plaintiffs, thus making them "eligible for the same [tax advantages] as Drury Inn and Bob Evans, if they, like Drury Inn and Bob Evans, satisfy the qualifying remodeling or improvement activities that are prerequisites to a tax abatement." The court opined that there may even be a "misunderstanding" between the parties because Ballubhai Patel, plaintiffs' representative, and Nanubhai Patel, owner of plaintiff Comfort Inn, testified in their depositions that they were unaware that their hotels were within the CRA and that they could also potentially qualify for the tax abatement. The court noted accurately that plaintiffs did not take the steps necessary to receive the tax abatements, did not apply for them, and Grove City did not refuse them.

The district court also relied reasonably upon *Zajicek v. Aaby*, No. 94 C 50066, 1995 WL 150031 (N.D. Ill. Apr. 3, 1995) as persuasive authority. There the plaintiff asserted a § 1983 Equal Protection claim alleging that a city discriminated against him by not awarding him tax abatements for his residential mobile home park under an ordinance creating an "enterprise zone." *Id*. at *1-*2. Like Grove City's ordinance, the ordinance in *Aaby* awarded tax abatements only to businesses

within the zone that engaged in remodeling, rehabilitation, or new construction. *Id*. Plaintiff

complained that his mobile home park was "similarly situated" to "other residential developments

such as subdivisions, condominiums and apartments [sic] buildings, and the ordinance establishing

the enterprise zone deprive[d] [him] of the benefits granted to other similarly situated residential

developments without a rational reason." *Id*. at *2 (internal quotation marks omitted). The court

granted the defendant's motion to dismiss plaintiff's Equal Protection claim under Rule 12(b)(6) of

the Federal Rules of Civil Procedure, stating:

> [T]he essence of plaintiff's equal protection claim is that he did not receive certain tax benefits under the ordinances. The tax benefits at issue are only made available to those owners of property upon which new improvements have been constructed or upon which existing ones have been renovated or rehabilitated, or those who have purchased building materials for remodeling, rehabilitation or new construction. Thus, plaintiff must, to allege that he is similarly situated to those who have received the tax benefits, allege that he has undertaken improvements or purchased building materials either of which are similar to those improvements made or materials purchased by persons receiving the benefits. This he has not done.
>
> * * *
>
> It is well within the bounds of equal protection law to provide tax benefits to certain property owners in an effort to improve the conditions of the property i.e., those who either engage in construction, rehabilitation or renovation or who use building materials in doing so, while not allowing the same benefits to other similarly situated property or property owners who do not undertake such construction, rehabilitation or renovation.

*Id*. at *4, n.2.

The district court also correctly rejected plaintiffs' allegations of past discrimination.

Plaintiffs base their contention that Grove City discriminated against them by refusing their pre-2003

requests for tax abatements on a short interaction with former Grove City administrator, Charles

Boso, Jr., in 1996 or 1997. However, plaintiffs do not allege that any other business was granted a tax abatement at that time and concede that they did not request or apply for any other tax abatement after that single inquiry some six or seven years prior to the effective date of the 2003 ordinance.

Plaintiffs' complaint that Grove City discriminated against them by denying them variances for "signage and height" is equally without merit. Ballubhai Patel acknowledged in his deposition that Drury Inns has a higher sign than his hotels only because it is a higher building, six other motels in Grove City – all of them Chinese- and Indian-owned – have "high-rise signs," all six of the Asian-owned motels requested, and were granted, variances for their signs by Grove City, he knew of no other motels owned by plaintiffs that applied for and were denied variances for high-rise signs, he never applied for a variance to construct a high-rise building, he was unaware of any other plaintiff who applied to build a high-rise building, he had no knowledge of any design features that were denied to plaintiffs but granted to Drury Inns, he knew of no development restrictions that Grove City enforced against him or the other plaintiffs that it did not apply to Drury Inns, and he was unaware of any zoning codes that Grove City applied to him or the other plaintiffs that it did not enforce against Drury Inns. When asked whether "Grove City ever [took] any action against any of the hotels that are plaintiffs in this case because those hotels were owned by Asian-Americans" and whether "Grove City ever refuse[d] to do anything for any of the hotels that are plaintiffs in this case because they are owned by Asian-Americans[,]" his response to both questions was: "Not that I know."

Echoing Ballubhai Patel's testimony, Nanubhai Patel stated in his deposition that his hotel,

the Comfort Inn, has a high-rise sign and that the Hampton Inn and Red Roof Inn, both of which are

owned by individuals of Indian descent, have high-rise signs. Nanubhai Patel also agreed that he had

no information that Grove City treated him differently than the owners of the Drury Inns,

discriminated against him because he is of Indian descent, or denied him the opportunity to file

applications, requests for variances, or "anything with the city."

In essence, plaintiffs have wholly failed to support their claim of unlawful discrimination.

Based on their concessions and the overwhelming evidence from which no reasonable jury could

conclude that Grove City illegally discriminated against them, we affirm the district court's grant of

summary judgment in Grove City's favor on plaintiffs' Equal Protection claim.

2.

Under the Due Process Clause of the Fourteenth Amendment, states are prohibited from

"depriv[ing] . . . any person of life, liberty, or property, without due process of law." U.S. CONST.

amend. XIV. In *Club Italia*, we explained:

> The right to procedural due process "requires that when a State seeks to terminate [a
> protected] interest . . . it must afford 'notice and opportunity for hearing appropriate
> to the nature of the case' before the termination becomes effective." *Bd. of Regents
> v. Roth*, 408 U.S. 564, 570 (1971) (quoting *Bell v. Burson*, 402 U.S. 535, 542
> (1971)). Importantly, procedural due process rights are only violated when a
> protected liberty or property interest is denied without adequate hearing. Thus, in
> order to succeed on this claim, Plaintiff must show (1) that it was deprived of a
> protected liberty or property interest, and (2) that such deprivation occurred without
> the requisite due process of law.

470 F.3d at 296.

Plaintiffs' appeal of the district court's grant of summary judgment on their due process claim

is both forfeited and meritless. After setting forth the applicable law on their due process claim, plaintiffs devote one sentence in their appellate brief to "arguing" why the district court's judgment should be reversed: "As discussed above, Grove City did not comply with its own ordinance and failed to notify [plaintiffs] that Drury Inn's plans were modified from 150 to 180 rooms, thereby depriving [plaintiffs] of their right to contest same at the Council meeting." Contrary to this assertion, however, plaintiffs did not "discuss[]" in their brief any matter relating to their due process appeal. Our law is well-settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Sandridge*, 385 F.3d 1032, 1035-36 (6th Cir. 2004). Accordingly, we deem plaintiffs' appeal of their due process claim forfeited.

We alternatively hold that plaintiffs' due process claim is meritless. Ballubhai Patel testified in his deposition that he was not aware of any law, statute, or ordinance either in Grove City or in Ohio that required Grove City to notify him of variances, building and design features, zoning modifications, or tax benefits requested by Drury Inns. In fact, he conceded that Grove City was not required to provide him special notice of variances, building and design features, zoning modifications, or tax benefits because he and the other owners of the plaintiff hotels were not neighboring properties of Drury Inn.

Plaintiffs' contentions that Grove City did not inform them "about the pending expansion of the CRA to include [their] properties and Drury Inn's property" or notify them "that they could obtain a tax abatement if they constructed meeting rooms" are puzzling. The 2003 ordinance

expanding the CRA is a city ordinance. Accordingly, plaintiffs at least were placed on constructive notice of it. Tami Kelly, Grove City's Clerk of Council, stated in her affidavit that the ordinance was both introduced and then approved at a public city council meeting, after she gave the required public notice that the ordinance would be considered at the meeting. She further stated that the public was notified that the ordinance had passed. Regarding their argument that Grove City would have granted them a special tax abatement if they "constructed meeting rooms," plaintiffs fail to develop that argument or substantiate it.

Significantly, Ballubhai Patel stated in his deposition that, to his knowledge, neither he nor any of the other owners of the plaintiff motels had ever been denied the opportunity to be heard at a hearing, to be heard at a proceeding, or receive information about Drury Inns because they are Asian-Americans. He further admitted that he did not attend any city council or planning commission public meetings concerning Drury Inns and that he was not even aware that Grove City provided public notices of its meetings. Similarly, Nanubhai Patel testified in his deposition that he was never denied the opportunity to attend any hearings or meetings with the city.

Based on this testimony, the district court correctly ruled that "even under Plaintiffs' *own understanding* of Grove City's legal obligations, the city was not required to provide them the specific notices Plaintiffs complain about not receiving." (Emphasis added.) We agree and affirm the district court's grant of summary judgment on plaintiffs' due process claim.

3.

Title VI of the Civil Rights Act of 1964 provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Plaintiffs' sole contention is that because Grove City violated its Equal Protection rights, it derivatively violated Title VI. Although Grove City argued below and reasserts on appeal that Title VI is inapplicable because it did not receive any federal financial assistance, the district court did not address that contention because it held that its grant of summary judgment on plaintiffs' Equal Protection claim also entitled Grove City to summary judgment on plaintiffs' Title VI claim.

We agree, and for the same reasons articulated in our analysis affirming the district court's grant of summary judgment on the merits of plaintiffs' Equal Protection claim, we also affirm the district court's grant of summary judgment on plaintiffs' Title VI claim.

B.

Finally, plaintiffs contend that the district court erred in granting summary judgment on its "public policy" claim in Count Eight. Plaintiffs devote one sentence to their appeal of this issue: "[T]he district court should not have granted summary judgment against [plaintiffs] on their federal claims, and therefore, the district court should not have granted summary judgment against [them] on their public policy claim."

The issue is forfeited. *Sandridge*, 385 F.3d at 1035-36 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Assuming arguendo that the public policy claim is subsumed by plaintiffs' other claims, the claim

also fails on its merits because plaintiffs' other claims are meritless.

## IV.

For these reasons, we affirm the judgment of the district court.

**KETHLEDGE, Circuit Judge, concurring in part and concurring in the judgment.** I believe we must determine whether we have Article III jurisdiction with respect to the Hotels' claims under the Ohio Declaratory Judgment Act before proceeding to decide *any* question of state law with respect to them. "'Without jurisdiction the court cannot proceed *at all* in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (emphasis added) (quoting *Ex parte McCardle*, 74 U.S. (7 Will.) 506, 514 (1868)). I think the Hotels plainly lack Article III standing with respect to their Ohio declaratory-judgment claims; and that, in my view, should be the end of the matter.

The majority proceeds instead with a rather extended analysis of the question whether Ohio law permits the Hotels to assert their declaratory-judgment claims. With due respect, I think that analysis lies beyond our powers under Article III. There is no Supreme Court precedent, to my knowledge, that permits us to address questions of purely state law as to claims over which we lack Article III jurisdiction. *Steel* says as much directly, and nothing in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), is to the contrary.

The majority cites *Ruhrgas* for the proposition that there is no mandatory "sequencing of jurisdictional issues." *Id.* at 584. That was true enough in the unusual circumstances presented there, but those circumstances are very different from the ones here. First, and most important, the Court specifically noted that *there was no defect in Article III jurisdiction* in *Ruhrgas*; the question as to subject-matter jurisdiction, the Court was careful to point out, was whether "the complete

diversity required by 28 U.S.C. § 1332, *but not by Article III*, is absent." *Id.* at 584 (emphasis added; citations omitted). *Ruhrgas* therefore affords federal courts no license to decide issues to which the "[t]he judicial power of the United States" does not extend. U.S. Const. art. III, § 1.

Second, both of the jurisdictional grounds at issue in *Ruhrgas* (namely, subject-matter jurisdiction and personal jurisdiction) depended on *federal* rather than state law. Moreover, the personal-jurisdiction ground that the Court said could be reached first was, unlike the subject-matter one, constitutional in nature. *See* 526 U.S. at 584 ("Ruhrgas relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case"); *see also id.* ("'The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause'") (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (alteration in original)). *Ruhrgas*, therefore, was a case in which there was no defect in the courts' Article III power, and in which the Supreme Court held that, as between two federal jurisdictional issues, the district court did not abuse its discretion in reaching the constitutional one first. That holding does not permit us to decide issues of Ohio law in the absence of judicial power under Article III.

To say that a federal court lacks power under Article III is to say that it lacks any power at all. I believe we lack power under Article III with respect to the Hotels' state-law claims for declaratory relief, and thus I respectfully concur only in the judgment as to those claims. I fully concur, however, in the majority's analysis of the Hotels' federal-law claims.