RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT DAVIS; D. ETTA WILCOXON,

　　　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, et al.,

　　　　　　　　　*Defendants-Appellees*,

DETROIT DOWNTOWN DEVELOPMENT AUTHORITY, et al.,

　　　　　　　　　*Intervening Defendants-Appellees*.

> No. 17-1909

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-12100—Mark A. Goldsmith, District Judge.

Argued:  March 15, 2018

Decided and Filed:  August 9, 2018

Before:  BOGGS, CLAY, and LARSEN, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Andrew A. Paterson, Ann Arbor, Michigan, for Appellants.  Kevin J. Campbell, THE ALLEN LAW GROUP, P.C., Detroit, Michigan, for Detroit Public Schools Appellees. David H. Fink, FINK + ASSOCIATES LAW, Bloomfield Hills, Michigan, for Detroit Downtown Development Appellees.  **ON BRIEF:**  Andrew A. Paterson, Ann Arbor, Michigan, for Appellants.  Kevin J. Campbell, Floyd E. Allen, Lawrence T. García, Amy M. Robertson, THE ALLEN LAW GROUP, P.C., Detroit, Michigan, for Detroit Public Schools Appellees. David H. Fink, Darryl Bressack, FINK + ASSOCIATES LAW, Bloomfield Hills, Michigan,

Jeffrey M. Sangster, Dennis K. Egan, Anthony M. Sciara, Tyler P. Phillips, KOTZ SANGSTER WYSOCKI P.C., Detroit, Michigan, for Detroit Downtown Development Appellees.

CLAY, J., delivered the judgment and opinion of the court, in which BOGGS and LARSEN, JJ., joined, except as to the issue discussed in Part II.B. BOGGS, J. (pg. 12), delivered the opinion of the court on that issue, in which LARSEN, J., joined.

––––––––––––––––––

**OPINION**

––––––––––––––––––

CLAY, Circuit Judge. Plaintiffs Robert Davis and D. Etta Wilcoxon seek a declaratory judgment and mandamus relief against Defendant Detroit Public Schools Community District Board of Education, arguing that the school board has the authority and obligation, under Mich. Comp. Laws §§ 380.11a(10), 380.1216, 168.312, and 168.641(4), to place on the next Detroit election ballot a question asking city voters to approve or disapprove of certain tax expenditures by Intervenor-Defendants Detroit Downtown Development Authority ("DDA") and the Detroit Brownfield Redevelopment Authority ("DBRA"). The district court dismissed Plaintiffs' claims and entered judgment under Rule 54(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, we **AFFIRM** the judgment.

To the extent that Part II.B of this opinion is inconsistent with the concurring opinion, the concurring opinion constitutes the opinion of the Court.

**STATUTORY BACKGROUND**

The DDA and DBRA are tax increment finance entities created by the City of Detroit to facilitate economic development and to spur economic growth projects within the City. They operate according to the rules set forth in Mich. Comp. Laws § 125 *et seq.*, using property tax revenue to finance construction projects in the City of Detroit. As relevant here, in 2016, the DDA and DBRA agreed to fund $56.5 million of construction projects related to the relocation of the Detroit Pistons professional basketball team from Auburn Hills, Michigan, to Little Caesars Arena in downtown Detroit. The construction projects included improvements to Little Caesars Arena, construction of a new basketball practice facility, and creation of a Pistons corporate headquarters. Plaintiffs oppose the projects and seek a city-wide referendum asking

voters to approve or disapprove of these tax expenditures. Because Plaintiffs' claims require an understanding of the law governing development authorities, we begin with an overview of the relevant Michigan law.

In Michigan, a municipality may create a "downtown development authority" to "halt property value deterioration and increase property tax valuation where possible in its business district, to eliminate the causes of that deterioration, and to promote economic growth[.]" Mich. Comp. Laws § 125.1653(1). A municipality may also create a "brownfield redevelopment authority," which serves similar functions. *See* Mich. Comp. Laws § Ch. 125. Both types of authorities are funded through tax increment financing ("TIF"). The Michigan Supreme Court has explained how tax increment financing works:

> [A] tax increment financing (TIF) plan allows a local government to finance public improvements in a designated area by capturing the property taxes levied on any increase in property values within the area. Under a TIF plan, a base year is established for the project area. In subsequent years, any increase in assessments above the base year level is referred to as the captured value. All, or a portion, of the property taxes levied on the captured value (SEV) is diverted to the area's development plan.

> Tax increment financing is premised on the theory that, without the redevelopment project, property values would not increase, or that increases in land values and assessments in the project area are *caused* by the redevelopment authority's own construction of economic activity in the district.

*In re Request for Advisory Opinion on Constitutionality of 1986 PA 281*, 422 N.W.2d 186, 189 (Mich. 1988) (emphasis in original) (quotation marks, citations, and footnotes omitted).

In the years since the TIF legislation was passed, numerous Michigan municipalities have established development authorities. As relevant here, the City of Detroit created the DDA in 1978 and the DBRA in 1996.

## FACTUAL AND PROCEDURAL HISTORY

This particular dispute has its roots in a Detroit ballot proposal. Specifically, in 2012, Detroit residents voted to allow the school district of the City of Detroit to increase the amount of property taxes it could collect. The proposal specified that the revenue would be used "to provide funds for operating expenses of [the] School District." (R. 12, complaint, ¶ 111.)

Plaintiff Wilcoxon is a Detroit resident who voted on the proposal. Plaintiff Robert Davis is a resident of Highland Park, Michigan. Because he is not a Detroit resident, he could not vote on the proposal. Nonetheless, as a self-styled "community activist," he asserts that he maintains a keen interest in the City's affairs.[1]

In June 2013, the DDA announced its intent to begin capturing some of the tax revenue authorized by the ballot proposal to fund the construction of Little Caesars Arena in downtown Detroit. The DDA hoped to build a state of the art home for the Detroit Red Wings professional hockey team and predicted that the arena would also host a variety of other sports and entertainment events. In December 2016, the DDA revised its development plan, making changes that would allow the Detroit Pistons professional basketball team to relocate to Little Caesars Arena. The revised plan provided for additional improvements to the arena, construction of a new basketball practice facility, and creation of a Pistons corporate office and headquarters. In June 2017, the DBRA agreed to foot some of the bill. All told, the DDA and DBRA estimated that they would spend a combined $56.5 million on the project. Much of this money would go towards reimbursing construction costs that private developers had already advanced. Indeed, at this point, the development project is largely complete.

Plaintiffs, however, oppose the Little Caesars Arena project. On June 20, 2017, Plaintiffs emailed the school board, the board's president, Dr. Iris Taylor, and another school official, asking the board to place on the November 2017 general election ballot a question asking voters to approve or disapprove of the DDA's and DBRA's use of tax revenue for the Pistons relocation. Plaintiffs noted that the 2012 ballot proposal authorizing the taxes specified that the revenue would be used for school operating purposes; it did not mention anything about the Pistons. Accordingly, Plaintiffs argued that the DDA and DBRA were attempting to divert tax revenue without voters' consent, in violation of Mich. Comp. Laws § 380.1216. That statute provides that "money raised by tax shall not be used for a purpose other than that for which it

---

[1]Plaintiff Davis and his lawyer, Andrew Paterson, "have a prolific history litigating cases in Michigan state courts and federal courts. Their filings could be defined, in many instances, as repetitive, vexatious, and frivolous." *Davis v. Johnson*, 664 F. App'x 446, 450 (6th Cir. 2016).

was raised without the consent of a majority of the school electors of the district voting on the question at a regular or special school election." Mich. Comp. Laws § 380.1216.

Three days after receiving Plaintiffs' email, the board held a special meeting to consider Plaintiffs' request. At the meeting, the board's attorney said she believed the board lacked authority to place the tax question on the ballot. During the public comment portion of the meeting, Robert Davis challenged the attorney's opinion. He cited, among other statutes, Mich. Comp. Laws § 380.11a(10), which provides that "[t]he board of a general powers school district may submit to the school electors of the school district a question that is within the scope of the powers of the school electors[.]"

Despite Plaintiffs' efforts, the board did not put the question on the November 2017 ballot. Plaintiffs responded by filing a lawsuit in the district court against the board, Dr. Taylor, the school district, and related entities. Plaintiffs also sued the company managing the Little Caesars Arena project (Olympia Entertainment Events Center, LLC), the company that owns the Detroit Pistons (Palace Sports and Entertainment, LLC), and the National Basketball Association. The DDA and DBRA intervened as defendants. In broad strokes, Plaintiffs raised a variety of claims based on the First Amendment, the Fourteenth Amendment, the Voting Rights Act, and various state statutes. However, only two of their claims are pertinent to this appeal. Specifically, in count VIII, Plaintiffs sought a declaratory judgment stating that the school board has authority under state law to place their tax question on the ballot. In count IX, Plaintiffs sought a writ of mandamus ordering the board to place their tax question on the ballot.

In July 2017, the district court either dismissed or granted summary judgment to Defendants on all but three of Plaintiffs' claims. As relevant here, the district court dismissed count VIII, ruling that Plaintiffs lacked standing under state law to seek a declaratory judgment. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, No. 17-cv-12100, 2017 WL 3129838, at *2–4 (E.D. Mich. July 24, 2017). The district court reasoned that Plaintiffs had raised only a generalized grievance, not a special or unique injury, and therefore lacked standing to pursue the relief they requested. *Id*. The district court also dismissed count IX, denying Plaintiffs' request for a writ of mandamus. *Id.* at *4–7. The court reasoned that Plaintiffs could have filed this lawsuit in 2013, when the DDA first publicized its plan to use tax revenue to fund construction of Little

Caesars Arena.  Accordingly, it found Plaintiffs' mandamus claim barred by *Bigger v. City of Pontiac*, 210 N.W.2d 1 (Mich. 1973), which requires plaintiffs to act promptly to challenge public-financing projects.  In a footnote, the court clarified that it did not believe Plaintiffs' mandamus claim was barred by Michigan's state-law standing principles.  *Davis*, 2017 WL 3129838 at *7 n.7.  It explained that under Michigan law, as distinct from federal law, standing requirements are relaxed when a litigant seeks mandamus relief in an elections matter.  *Id.*

After the district court's ruling, Plaintiffs moved the district court to enter partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 54(b) (allowing a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the court "expressly determines that there is no just reason for delay").  Plaintiffs argued that an immediate appeal was warranted on at least two of their state-law claims—counts VIII and IX—because they concerned a time-sensitive issue: whether the school board should be required to place their tax question on the November 2017 general election ballot.  The district court granted Plaintiffs' motion and entered a Rule 54(b) partial final judgment.[2]  The claims not dismissed by the district court remain pending.

Plaintiffs timely appealed the Rule 54(b) judgment, and the case is now fully briefed.  Among other things, the parties dispute whether Plaintiffs have standing under Article III of the United States Constitution; whether Plaintiffs have standing under Michigan state law; and whether Plaintiffs' claims are barred by *Bigger*.

## DISCUSSION

We start by identifying what is at issue in this appeal and what is not.  First, this appeal does not cover any of the federal claims Plaintiffs raised in the district court, such as their claims under the First Amendment, the Equal Protection Clause, the Due Process Clause, and the Voting Rights Act.  Those claims were either dismissed but were not included in the district

---

[2]Because Plaintiffs' brief focuses only on claims VIII and IX, we need not decide whether the district court also entered final judgment on Plaintiffs' other state-law claims.  *Compare* R. 54, Opinion, PageID# 1684 (describing Plaintiffs' motion as seeking "a partial final judgment and certificate of appealability permitting them to appeal the dismissal of counts VIII and IX"), *with* R. 55, Judgment, PageID# 1688 (stating that "a partial final judgment is hereby entered relative to the Court's disposition of Plaintiffs' claims under state law, as set out in this Court's opinion and order entered on July 24, 2017").

court's Rule 54(b) partial final judgment—and therefore are not at issue in this appeal—or they remain pending in the district court. Plaintiffs will have the opportunity to appeal the disposition of any or all of those claims once the district court enters final judgment.

Second, most of Plaintiffs' state-law claims are also not at issue in this appeal. Specifically, Plaintiffs' brief focuses only on their claims for declaratory relief (count VIII) and mandamus relief (count IX) ordering the school board to place their tax question on the next election ballot. Consequently, this opinion does not address Plaintiffs' remaining state-law claims, such as their claim that the DDA Act has been violated or their claim that private developers cannot be reimbursed for expenses they advanced for renovations to Little Caesars Arena.

Accordingly, our task in this appeal is narrow: we must determine whether the district court properly dismissed Plaintiffs' claims for a declaratory judgment (count VIII) and mandamus relief (count IX) as to whether the school board has the authority and obligation, under Michigan law, to place Plaintiffs' tax question on the next Detroit election ballot. No other issues are currently before us.

## I.      Michigan Law Governing Declaratory Judgments and Mandamus Relief

Under Michigan's declaratory judgment rule, a court "may declare the rights and other legal relations of an interested party" in any "case of actual controversy within its jurisdiction." Mich. Ct. R. 2.605(A)(1). As the Michigan Supreme Court has explained, an "actual controversy" exists

> where a declaratory judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his legal rights.

> This requirement of an "actual controversy" prevents a court from deciding hypothetical issues. However, a court is not precluded from reaching issues before actual injuries or losses have occurred. . . .

> Therefore, what is essential to an "actual controversy" under the Declaratory Judgment rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised.

*Shavers v. Kelley*, 267 N.W.2d 72, 82 (Mich. 1978) (citations omitted).

In addition, Michigan law allows a party to request mandamus relief—that is, an order compelling the defendant to perform a particular action—in exceptional circumstances. Specifically, a writ of mandamus "is an extraordinary remedy that will only be issued if (1) the party seeking the writ has a clear legal right to the performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result." *Coal. for a Safer Detroit v. Detroit City Clerk*, 820 N.W.2d 208, 210 (Mich. Ct. App. 2012) (quotation marks and citation omitted). "The party seeking mandamus has the burden of establishing that the official in question has a clear legal duty to perform." *Id.*

In the instant case, Plaintiffs request a declaratory judgment stating that, under Michigan law, the school board has authority to place their tax question on the next general election ballot. Plaintiffs also request mandamus relief ordering the school board to place their tax question on the ballot. Plaintiffs argue that the school board is authorized and required to take such action pursuant to Mich. Comp. Laws §§ 380.11a(10), 380.1216, 168.312, and 168.641(4). These statutes address how city tax revenue may be spent and describe the school board's authority to place questions on election ballots. *See* Mich. Comp. Laws § 380.11a(10) ("The board of a general powers school district may submit to the school electors of the school district a question that is within the scope of the powers of the school electors and that the board considers proper for the management of the school system or the advancement of education in the school district. . . ."); § 380.1216 ("[M]oney raised by tax shall not be used for a purpose other than that for which it was raised without the consent of a majority of the school electors of the district voting on the question at a regular or special school election."); § 168.312(1) (describing timing and other requirements for placing questions on ballots); § 168.641(4) (describing timing and other requirements for holding special elections).

## II.     Article III Standing

However, before we address the merits of Plaintiffs' claims, we must first determine whether Plaintiffs have Article III standing to raise them. Indeed, whether a plaintiff has Article III standing is "the threshold question in every federal case[.]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, we must consider whether Plaintiffs have standing under Article III

before considering whether they have standing under state law.  *See Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 782 (6th Cir. 2007) ("The district court's reliance on Ohio law in dismissing the Workers' taxpayer claims for lack of standing is therefore misplaced.  It should have begun its inquiry into the Workers' standing with an analysis under Article III of the U.S. Constitution." (citation omitted)); *But see Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 5–7 (6th Cir. 2009) (holding that there is no sequencing requirement to deciding jurisdictional issues and deciding the state standing question first).

To establish Article III standing, a party must meet three requirements: (1) "he must demonstrate 'injury in fact'—a harm that is both concrete and actual or imminent, not conjectural or hypothetical"; (2) "he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant"; and (3) "he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact."  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quotation marks, citations, and alterations omitted).  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

## A.     Failure to Place Plaintiffs' Tax Question on the Ballot

To the extent Plaintiffs' injury is viewed as the school board's failure to place their tax question on the ballot, it is not sufficiently concrete or particularized to constitute an injury in fact.  Specifically, "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992).  This bar on generalized grievances as a basis for Article III standing applies in the instant case for a simple reason: Plaintiffs were not affected by school board's decision in any "personal and individual way."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation marks and citation omitted).  On the contrary, the school board's failure to place Plaintiffs' tax question on the ballot affects all Detroit voters equally.  Davis, moreover, is not even a Detroit voter.

### B.      Alleged Misuse of TIF Revenue

To the extent Plaintiffs' injury is viewed as the potential misuse of TIF revenue, they lack standing for a different reason: their injury (alleged misuse of city tax revenue) would not be redressed by their requested relief (a referendum asking Detroit residents to vote on these tax expenditures).[3]  Specifically, TIF authorities exist pursuant to the laws of the State of Michigan. *See* Mich. Comp. Laws § 125 *et seq.*  Those laws, in turn, provide that each municipality "shall transmit" all applicable tax increments to the appropriate TIF authority.  Mich. Comp. Laws § 125.1665(1) (downtown development authorities); § 125.2666(1) (brownfield redevelopment authorities).  Municipalities have no discretion in the matter.  *See 1991-1992 Mich. Op. Att'y Gen.* 60, 1991 WL 550653 (1991) ("[T]he Legislature has plainly commanded that 'the tax levy of all taxing bodies' on the 'captured assessed value' is to be transmitted to the authority.  There are no statutory exceptions for special millage levies approved by the voters for limited purposes.").  Consequently, Detroit city voters cannot, through a public referendum, prevent the TIF transfers to the DDA and DBRA, because the City cannot disregard or circumvent the laws of the state requiring such transfers.  *See E. Jackson Pub. Sch. v. State*, 348 N.W.2d 303, 306 (Mich. Ct. App. 1984) ("School districts and other municipal corporations are creations of the state.  Except as provided by the state, they have no existence, no functions, no rights and no powers.  They are given no power, nor can any be implied, to defy their creator[.]" (footnote omitted)).

In addition, a city-wide referendum would not affect how the DDA and DBRA spend the TIF revenue.  Michigan law provides clear instructions on how a TIF plan can be modified.  Specifically, a downtown development plan may be modified if "the modification is approved by the [municipality's] governing body upon notice and after public hearings and agreements as are required for approval of the original plan."  Mich. Comp. Laws § 125.1664(5).  Similarly, "amendments to an approved brownfield plan must be submitted by the authority to the

---

[3]On this view of Plaintiffs' injury, Plaintiff Wilcoxon may have suffered an injury in fact due to her status as a Detroit taxpayer. *See Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 210 (6th Cir. 2011) (en banc) ("Plaintiffs seeking to establish municipal-taxpayer standing are required to meet a less rigorous injury standard than those seeking standing as federal or state taxpayers.  Unlike federal or state taxpayers, municipal taxpayers may fulfill the injury requirement by pleading an alleged misuse of municipal funds.").  Plaintiff Davis, by contrast, has not suffered such an injury in fact because he is not a Detroit taxpayer.

governing body for approval or rejection following the same notice necessary for approval or rejection of the original plan." Mich. Comp. Laws § 125.2664(6). These statutes do not give Detroit residents the right to void a TIF plan through a public referendum. Therefore, a public referendum would have no legal effect and would not redress Plaintiffs' injury.

### C.     Summary

For all these reasons, Plaintiffs lack Article III standing. As a result, we do not reach the merits of their claims, nor do we consider whether their claims are also barred by the *Bigger* doctrine or by Michigan's state-law standing requirements. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))). Before concluding, we reiterate that our ruling today may not end this litigation. As described earlier in this opinion, Plaintiffs may still appeal the disposition of their federal claims once the district court enters final judgment.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.[4]

---

[4]Because we dismiss Plaintiffs' claims for lack of Article III standing, we deny as moot the DDA's and DBRA's motion to dismiss this appeal due to Plaintiffs' failure to file a timely brief. We also deny as moot Plaintiffs' motion to file a late response to the motion to dismiss.

_____

**OPINION**

_____

BOGGS, Circuit Judge, concurring in all parts of the opinion, except section II.B.  While I fully agree that the Plaintiffs lack Article III standing to pursue their claims, I write briefly to explain why the Plaintiffs' alleged injury cannot be construed as the misuse of TIF revenue. Simply put, this conclusion follows from the fact that only Counts VIII and IX are before this court.  *See supra* p. 6 n.2.  In Count VIII, the Plaintiffs sought a declaratory judgment that the "Defendant Board of Education Has The Statutory Right . . . To Place The Question on The November 2017 General Election Ballot[.]"  Amended Compl. 55.  In Count IX, the Plaintiffs requested a "Writ of Mandamus Compelling Defendant Board of Education To *Place On The Ballot*" the question of whether the DDA and DBRA were authorized to use the TIF revenue as planned.  *Id.* at 57 (emphasis added).  The plain language of the complaint therefore leaves little doubt that the alleged injury—at least in Counts VIII and IX—is the Defendants' failure to place the requested question on the ballot.  Such an understanding is confirmed by the fact that the very next claim in the complaint concerns the misuse of TIF revenue.  In Count X of the amended complaint, the Plaintiffs requested:

> a declaratory judgment . . . that Mich. Comp. Laws § 380.1216 of the Revised School Code *prevents the use of tax revenue* generated from the levy of the 18-mills Detroit Public Schools' Operating Millage for a different purpose . . . *without first obtaining consent* from the majority of the Detroit Public Schools' electorate.

*Id.* at 62 (¶ 234) (emphasis added).

To be clear, my objection is not merely a matter of linguistic accuracy.  To the extent that this court conceives of the injury as the misuse of TIF revenue, then it is adjudicating the Plaintiffs' standing to raise a claim, namely, Count X, on which we have declined to say whether the district court had entered final judgment, *see supra* p. 6 n.2.  Accordingly, I believe that we need not weigh in on the Plaintiffs' standing to challenge the use of TIF revenue.