**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0633n.06

Case No. 18-2304

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

ROBERT DAVIS and D. ETTA WILCOXON,

    Plaintiffs-Appellants,

v.

DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT; DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT BOARD OF EDUCATION; IRIS TAYLOR; DETROIT PUBLIC SCHOOLS; OLYMPIA ENTERTAINMENT EVENTS CENTER, LLC; PALACE SPORTS AND ENTERTAINMENT, LLC; NATIONAL BASKETBALL ASSOCIATION,

    Defendants-Appellees,

DETROIT DOWNTOWN DEVELOPMENT AUTHORITY; DETROIT DOWNTOWN REDEVELOPMENT AUTHORITY,

    Intervening Defendants-Appellees.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**OPINION**

</td></tr>
</table>

BEFORE: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

    NALBANDIAN, Circuit Judge. This case started with a fight over whether Michigan law allows tax dollars allocated for schools to go to development authorities for constructing sports complexes without a vote from the electorate. Plaintiffs Robert Davis and D. Etta Wilcoxon brought state-law claims to stop this transfer of funds. Davis brought an Equal Protection claim

related to a school board meeting where these funds were discussed. Because the Plaintiffs lack standing to bring their state-law claims, we affirm summary judgment on those counts. And Davis's Equal Protection claim fails because he has not shown that the Detroit Public School District Board treated him differently than others similarly situated. So we **AFFIRM**.

## I.

Detroit voters approved an 18-mills Detroit Public Schools' Operating Millage in 2012. *Davis v. Detroit Pub. Schs. Cmty. Dist. ("Davis I")*, 899 F.3d 437, 440 (6th Cir. 2018). This increase in taxes sought "to provide funds for operating expenses of [the] School District." *Id.*

The next year, Intervening Defendants Detroit Downtown Development Authority ("DDDA") and Detroit Brownfield Redevelopment Authority ("DBRA") stepped in and complicated this plan. DDDA and DBRA are tax increment financing ("TIF") entities. Such entities finance and help implement public improvements in designated areas with TIF plans. A TIF plan "allows a local government to finance public improvements in a designated area by capturing the property taxes [from] any increase in property values within the area . . . . [A]ny increase in assessments above the base year level is referred to as the captured value." *Id.* (citing *In re Request for Advisory Op. on Constitutionality of 1986 PA 231*, 422 N.W.2d 186, 189 (Mich. 1988)). DDDA and DBRA can thus take money collected from "ad valorem property taxes and specific local taxes" for their chosen public improvement work or "catalyst development project." *See* Mich. Comp. Laws § 125.4201(cc)(vi).

DDDA chose to construct the Little Caesars Arena, which was to serve as, among other things, the new home of the Detroit Red Wings professional hockey team, as its catalyst development project. In November and December 2016, DDDA revised the plan to include fitting the arena for the Detroit Pistons, who were relocating to the area. The modified plan also included

reimbursing Olympia Entertainment Events Center and Palace Sports and Entertainment, LLC ("Entertainment Defendants") for their work in constructing the arena and other Detroit Pistons facilities. Later into the project, DBRA joined the plan and agreed to split some of the project's costs. *Davis I*, 899 F.3d at 440.

Davis, a community activist, was unhappy about this capture of tax revenue that he thought the Detroit public schools should receive in full. He believed Mich. Comp. Laws § 380.1216 required the electorate to vote before DDDA and DBRA could take the collected taxes.

On June 20, 2017, Davis emailed the Detroit Public Schools Community District Board of Education ("Board"); the Board's President, Dr. Iris Taylor; and an elected member of the Board, Mr. Lamar Lemmons. Davis wanted the Board to place a question on the November 2017 general election ballot asking voters to approve or disapprove the use of tax revenue for the Detroit Pistons' relocation and the completion of the Little Caesars Arena.

Davis attended the June 23, 2017 Board meeting, where the Board discussed this issue. The Board's legal counsel said that she did not think the Board could place the misuse of revenue issue on the ballot. Davis tried interrupting the Board twice to argue why counsel was incorrect. He ultimately spoke for two minutes during the public comment portion instead. The Board's treatment of Davis during this meeting sparked his Equal Protection claim, since other speakers allegedly got to speak for more than two minutes. Davis objected to the Board not waiving the two-minute rule for him like it had supposedly done for another community activist in a previous meeting. The meeting ended without the Board deciding whether to put the issue on the ballot. The Board and its legal counsel wanted to complete more research first.

Days after the meeting, Davis and Wilcoxon, a concerned Detroit citizen, sued. They sued the Board, Dr. Taylor, and Detroit Public Schools Community District (collectively "DPS

Defendants"), the Entertainment Defendants, the National Basketball Association, and Detroit Public Schools. Intervening Defendants DDDA and DBRA joined the suit soon after.

Davis and Wilcoxon brought seven federal claims (Counts 1–7), including an Equal Protection violation arising from the Board meeting where Davis received only two minutes to speak. According to Davis, the Board regularly waives the two-minute rule and allows more time to speak, especially when the Board considers them "experts." The suit also included seven state-law claims (Counts 8–14), in which Plaintiffs mainly sought declaratory judgments determining that the use of the funds was a ballot question and that the TIF entities were misusing the funds. The last two claims requested fees and damages (Counts 15–16). Plaintiffs also requested a preliminary injunction and a permanent injunction.

The DPS Defendants and Intervening Defendants moved to dismiss shortly after Plaintiffs sued. The district court sua sponte converted Intervening Defendants' motion to dismiss to a motion for summary judgment. The district court granted Intervening Defendants' motion for summary judgment on all counts against them. And the court dismissed all of Plaintiffs' claims, besides the Equal Protection claim, against the DPS Defendants.

Plaintiffs requested a 54(b) entry of final judgment for the state-law claims so that Plaintiffs could immediately appeal the time-sensitive claims to this court. The district court granted that motion, and an appeal to this Court ensued. The Equal Protection claim and fee counts remained with the district court.

But uncertainty existed over whether the district judge entered final judgment for Counts 8 and 9 only or for all state-law claims as Plaintiffs had requested. Even so, Plaintiffs briefed on appeal only the dismissal of Counts 8 and 9, and we affirmed the dismissal of Counts 8 and 9 for lack of standing. *Davis I*, 899 F.3d at 445. We declined to comment on whether the district court

entered final judgment on the other state-law claims, reasoning that Plaintiffs briefed only the two claims anyway. *Id.* at 441 n.2.

The district court then granted the DPS Defendants' now amended motion for summary judgment on the last remaining Equal Protection claim.[1] The court reasoned that Plaintiffs could not identify a similarly situated comparator, and there was no genuine issue of material fact that a rational basis existed for the Board's conduct. Plaintiffs appealed the rest of the case, which is before us now.

Thus, at issue is whether the district court erred in granting summary judgment on the Equal Protection claim (Count 2) and dismissing the remaining state-law claims that Plaintiffs did not brief during their first appeal in *Davis I* (Counts 10 and 12–14).[2]

## II.

This court reviews de novo a district court's grant of summary judgment. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). We also review motions to dismiss for lack of standing de novo. *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). We first assess the Equal Protection claim, and then we look to the remaining state-law claims.

### A.  Equal Protection Claim

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Davis does not argue an

---

[1] This required the dismissal of the fee and damages counts (Counts XV and XVI) since no count providing a cause of action remained.

[2] None of the other counts are relevant now. Because Plaintiffs did not brief Count 11 in *Davis I* or here, we consider that count abandoned. And because Plaintiffs did not appeal Counts 15 and 16 either in *Davis I* or here, we consider those counts abandoned, too.

infringement of a fundamental right or that he is a member of a suspect class. Rather, Davis relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id.* This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

In a class-of-one case, "the failure to make any concrete allegations with respect to similarly situated persons mandates a grant of summary judgment in the defendant's favor." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008). Davis marshals two pieces of evidence to avoid summary judgment. First, Davis attached newspaper articles to his summary judgment opposition. Those articles suggest that the Board allowed a different community activist to speak for longer than two minutes during a previous meeting on a different issue. Second, a board member, Lamar Lemmons, noted during his deposition that it is "typical" for the person who called the meeting to get more than two minutes to speak at meetings. Mr. Lemmons did not provide specific examples.

We dispense with Mr. Lemmons's deposition first. Since that testimony does not provide "concrete allegations" of individuals similarly situated to Davis, it cannot support Davis' claim. *See Braun*, 519 F.3d at 575. Davis' newspaper articles are also unhelpful since, as Defendants pointed out below, they constitute inadmissible hearsay. *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, Nos. 08-12247, 08-12274, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) ("If offered for the truth of the matter asserted, newspaper articles . . . constitute inadmissible hearsay."). Inadmissible hearsay cannot create the genuine issue of material fact Davis needs to survive summary judgment. *See Turner v. City of Taylor*, 412 F.3d 629, 652 (6th Cir. 2005) (affirming summary judgment because a "newspaper article was inadmissible hearsay" that "could not create a genuine issue of material fact for trial").

But even if we could consider those articles, they would not help Davis. The articles describe two hotly contested 2018 Board meetings when the Board removed a community activist, Ms. Moore, for disrupting a meeting before being permitted to speak at a second meeting later that week. Davis and Ms. Moore are not similarly situated individuals. Ms. Moore's community group was on the agenda for her meeting. Davis did not make the agenda for his.

So we find that Davis has not stated a cognizable Equal Protection claim because he has identified no similarly situated individuals.

### B. State-Law Claims

We also affirm the district court's dismissal of Plaintiffs' the state-law claims. Both Plaintiffs lack Article-III standing to pursue Count 14. Plaintiff Davis lacks Article-III standing to pursue Counts 10, 12, and 13. And Michigan law prevents Plaintiff Wilcoxon from pursuing Counts 10, 12, and 13.

### 1. Standing

Article-III standing is a threshold question that we must address before proceeding on the merits, even if the parties do not raise the issue. *Davis I*, 899 F.3d at 443 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). For standing under Article III, a plaintiff must first show that he has an injury-in-fact—"a harm that is both concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 443–44 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). Second, a causal connection must exist between the plaintiff's injury and the alleged conduct of the defendant. *Id.* And finally, the plaintiff needs to show redressability— "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Id.* Federal courts must determine that a plaintiff has standing under Article III before considering

whether a plaintiff has state-law standing. *Id.* (citing *Campbell v. PMI Food Equip. Grp. Inc.*, 509 F.3d 776, 782 (6th Cir. 2007).

## 2. Count 14

Count 14 requests a declaratory judgment stating that the Board did not receive proper notice of a Detroit City Council Meeting in violation of state law. This claim fails because Plaintiffs have no injury-in-fact. There is nothing concrete and particularized to Plaintiffs about this alleged violation of state law. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1545 (2016) (reiterating that a plaintiff's alleged injury-in-fact must be both concrete and particularized to convey Article-III standing) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). It is the *Board* that supposedly did not receive proper notice. Plaintiffs were not concretely or particularly injured by this. Thus, they lack standing to bring Count 14 because they suffered no injury-in-fact.

## 3. Counts 10, 12, and 13 as to Plaintiff Davis

In each of Counts 10, 12, and 13, Plaintiffs generally claim a misuse of tax funds.[3] This Court has recognized that a municipal taxpayer may allege an injury-in-fact simply by alleging a

---

[3] Count 10 is titled: "Declaratory Judgment Declaring That Tax Revenue Generated From the Levy of the 18-mills Detroit Public Schools' Operating Millage Cannot Be Used For A Different Purpose Without The Consent Of A Majority Of The School Electors Of The District Voting On The Question."

Count 12 is titled: "Declaratory Judgment [] Declaring That Defendants Olympia Entertainment and Palace Sports Cannot Be Reimbursed With Funds From The Levy of the 18-mills Detroit Public Schools' Operating Millage Without The Consent of The Majority of Electorate Pursuant to Mich. Comp. Laws § 380.1216 of the Revised School Code."

Count 13 is titled: "Declaratory Judgment [] Declaring That Defendants Olympia Entertainment and Palace Sports Cannot Be Reimbursed With Funds From The Levy of the 18-mills Detroit Public Schools' Operating Millage Because Such Use of Tax Revenue Would Violate The General Property Tax Act and the Michigan Supreme Court's Holding In *South Haven v[.] Van Buren Co[.] Bd[.] of Comm'rs*."

misuse of municipal funds.[4]  *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 210 (6th

Cir. 2011) (en banc).  But Davis is not a Detroit citizen—he lives in Highland Park.  So he can

have no injury-in-fact from Detroit's misuse of tax funds.  Thus, he failed to meet the injury-in-

fact requirement for standing, and the district court properly dismissed Counts 10, 12, and 13 as

brought by him.

### 4.  Counts 10, 12, and 13 as to Plaintiff Wilcoxon

Wilcoxon, on the other hand, is a Detroit citizen.  So she doesn't have the same problem

demonstrating her Article-III standing.  Regardless, Michigan law bars her claims.  Like Davis,

Wilcoxon alleges that the transfers both from Detroit to the TIFs and from the TIFs to the

---

[4] That said, we question whether the Supreme Court's reasoning in permitting municipal taxpayer standing remains a viable basis for that doctrine today.  The Court has compared municipal taxpayer interests to the interests of shareholders of a corporation, reasoning that municipal taxpayers are more apparently affected by the distribution of municipal funds than federal taxpayers are by the distribution of federal funds.  *Frothingham v. Mellon*, 262 U.S. 447, 486–87 (1923).  Yet state taxpayer standing, like federal taxpayer standing, is generally impermissible.  *Doremus v. Bd. of Educ.*, 342 U.S. 429, 434 (1952).  And many municipalities are just as large, if not larger, than states these days.  *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 221 (6th Cir. 2011) (en banc) (Sutton, J., concurring); *see also Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 733–34 (7th Cir. 2020).  So the "corporation" reasoning lacks much weight now.  We question the viability of municipal taxpayer standing but recognize we must apply it today.

What's more, the vast majority of taxpayer standing cases challenge an alleged misuse of tax funds as *unconstitutional*, typically under the First Amendment.  *See Doremus*, 342 U.S. at 434 (affirming need for concrete financial injury "[w]ithout disparaging the availability of the remedy by taxpayer's action to restrain *unconstitutional* acts" (emphasis added)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 347 (2006) (characterizing *Flast* as reserving the "possibility" that "specific *constitutional* limitations" other than the Establishment Clause might support federal taxpayer standing (emphasis added) (citing *Flast v. Cohen*, 392 U.S. 83, 102–03 (1968))); *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988) (describing *Flast*'s Establishment Clause exception as "*the* narrow exception" that the Court has recognized "to the general rule against [federal] taxpayer standing" (emphasis added)).  Rarely, if ever, do plaintiffs invoke taxpayer standing to challenge the misuse of municipal funds in *violation of state law*, as is the case here. *But see Crampton v. Zabriskie*, 101 U.S. 601 (1879); *Coleman v. Miller*, 307 U.S. 433, 445 (1939) (favorably citing *Crampton* in dicta); *Protect Our Parks*, 971 F.3d at 733–34 (municipal taxpayer standing analyzed and denied).  Regardless, for this case, we assume Wilcoxon has alleged an injury-in-fact.

Entertainment Defendant are unlawful uses of Detroit's tax revenue. And she asks us for declaratory judgments to stop the transfers. We consider Michigan claims under Michigan law. *See Aarti Hosp., LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 6 (6th Cir. 2009).

"[W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010). Michigan courts may award a declaratory judgment "[i]n a case of actual controversy within its jurisdiction." MCR 2.605(A)(1). A case is within the jurisdiction of the Michigan court "if the court would have jurisdiction of an action *on the same claim or claims* in which the plaintiff sought relief other than a declaratory judgment." MCR 2.605(A)(2) (emphasis added). If a plaintiff does not have standing, the court cannot exercise jurisdiction. *Miller v. Allstate Ins. Co.*, 751 N.W.2d 463, 467 (Mich. 2008).

Here, it is "well settled" that a Michigan court would not have jurisdiction over a claim by Wilcoxon for injunctive, monetary, or mandamus relief against Defendants. *Detroit Fire Fighters Ass'n v. City of Detroit*, 537 N.W.2d 436, 438 (Mich. 1995) (observing that "disgruntled citizens do not automatically have standing to sue a public body"); *Lansing Schs.*, 792 N.W.2d at 699 (holding that "[w]here a cause of action is not provided at law" the plaintiff must have "a special injury" "different from the citizenry at large"). Michigan does not recognize general municipal taxpayer standing. *Groves v. Dep't of Corr.*, 811 N.W.2d 563, 567 (Ct. App. Mich. 2011) ("[R]ecent cases uniformly condition taxpayer standing on the plaintiff taxpayers having suffered some harm distinct from that inflicted on the general public."); *Waterford Sch. Dist. v. State Bd. of Educ.*, 296 N.W.2d 328, 331 (Ct. App. Mich. 1980) ("[A] taxpayer has no standing to challenge the expenditure of public funds where the threatened injury to him is no different than that to

taxpayers generally."). Plaintiffs must plead a "special grievance." *Grosse Ile Comm. for Legal Tax'n v. Twp. of Grosse Ile*, 342 N.W.2d 582, 586 (Ct. App. Mich. 1983).

Wilcoxon has no "special grievance" here. The crux of her complaint is that the movement of Detroit's tax dollars away from its public schools to the TIF entities is unlawful. This alleged injury is not "distinct from that inflicted on the general public." *Groves*, 811 N.W.2d at 567; *see Lansing Schs.*, 792 N.W.2d at 699.

Wilcoxon would not have standing to pursue an injunction or damages or mandamus in Michigan courts. Jurisdiction over another form of relief is required for Michigan courts to exercise jurisdiction over a declaratory judgment claim. Since that jurisdiction does not exist, there is no jurisdiction here either. Michigan courts cannot hear this action.

So neither can we. Because Michigan courts cannot give Wilcoxon "relief other than a declaratory judgment" on her claims, Wilcoxon's request for a declaratory judgment fails for lack of standing.

### III.

Davis's Equal Protection claim fails because he failed to provide even one example of a person similarly situated. And the state-law claims fail because Plaintiffs lacked standing to bring them. For these reasons, we **AFFIRM** the judgment of the district court.